FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

2017 MAR 10  PM 3: 20

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS FLORIDA

DAVID HASTINGS,

     Plaintiff,

vs.                  Case No.:

INMATE SERVICES CORPORATION,

     Defendant.

2:17-cv-145-FtM-99CM

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, DAVID HASTINGS, by and through the undersigned counsel, and sues the Defendant, INMATE SERVICES CORPORATION, and says as follows:

### JURISDICTIONAL FACTS AND IDENTIFICATION OF THE PARTIES

1.    This is a cause of action for negligence, negligent hiring and retention and violations of Federal civil rights statutes (42 U.S.C. §1983) where the amount in controversy exceeds $100,000.00, exclusive of interest and costs.

2.    At all times material to this Complaint, the Plaintiff, DAVID HASTINGS, was a citizen and resident of the State of California.

3.    At all times material to this Complaint, the Defendant, INMATE SERVICES CORPORATION, was an Arkansas corporation doing business throughout the United States including Fort Myers, Lee County, Florida. The Defendant maintains its principal place of business at 220 N.6th Street Ste. A, West Memphis, AR 72301.

4.    The Defendant, INMATE SERVICES CORPORATION (hereinafter INMATE SERVICES) is not registered to do business in the State of Florida but at all times material to this

Complaint the defendant was in fact doing business within the State of Florida and committed tortious acts that culminated in damages to the Plaintiff in Lee County, Florida.

5.      At all times material to this Complaint, the Defendant, INMATE SERVICES, was a corporation providing transportation services to governmental entities. More specifically, the defendant, through contracts and agreements, contracted and agreed to transport inmates and prisoners across the country for extradition proceedings.

6.      On or about April 5, 2014, the Plaintiff, DAVID HASTINGS, was taken into custody by the Defendant, its agents and employees.

7.      Plaintiff, DAVID HASTINGS, was to be extradited to Fort Myers, Lee County, Florida upon an extradition request by the State of Florida and law enforcement officials in Fort Myers, Lee County, Florida.

8.      The Defendant agreed to provide transportation services for Mr. Hastings' extradition from the State of California to Fort Myers, Lee County, Florida.

9.      The Plaintiff, DAVID HASTINGS, was transported under horrific and demeaning conditions across 31 states before being delivered to jail officials in Fort Myers, Lee County, Florida on or about April 20, 2014.

10. The transportation services provided to extradite Mr. Hastings from California to Fort Myers, Lee County, Florida were pursuant to an agreement between the Defendant, INMATE SERVICES, and the State of Florida and/or law enforcement officials in Lee County, Florida and/or Mike Scott as Sheriff of Lee County, Florida. Plaintiff is not in possession of any copy of the contract or agreement between the Defendant and the entities that employed it by way of a contract or agreement, but Plaintiff expects that this agreement will be revealed through discovery in this action.

2

11. The damages sustained by the Plaintiff, DAVID HASTINGS, culminated with his delivery to jail officials on or about April 20, 2014 in Fort Myers, Lee County, Florida.

12. Jurisdiction in this matter is invoked pursuant to 28 U.S.C. 1332 in that the Plaintiff and Defendant are diverse citizens and the damages occurred in Lee County, Florida.

13. Additionally, the jurisdiction of the Federal Court is invoked pursuant to the Federal civil rights law ( 42 U.S.C. §1983) in that at all times material to this Complaint, the Defendant was acting under color of state law.

14. The Plaintiff has performed all conditions precedent to the maintenance of these causes of action.

15. Venue is proper in the United States District Court for the Middle District of Florida in that the Defendant was doing business in the State of Florida and delivered Plaintiff, DAVID HASTINGS, in his damaged state to the jail in Fort Myers, Lee County, Florida.

## FACTS GIVING RISE TO THESE CAUSES OF ACTION

16. Prior to April 4, 2014, the Plaintiff, DAVID HASTINGS, was embroiled in divorce proceedings with his now ex-wife: Elaine Sirt-Hastings. The divorce proceedings involving Mr. Hastings were filed by his now ex-wife in Lee County, Florida.

17. During the divorce proceedings, the now ex-wife obtained a " No Contact Order" against Mr. Hastings. As part of the proceedings in the state court in Lee County, Florida, an order was entered by a state court judge that Mr. Hastings have no contact with his 13-year-old daughter.

18. At the instance of his now ex-wife, law enforcement officials in Lee County, Florida filed charges against Mr. Hastings for the aggravated stalking of his minor child. The charges were based on Mr. Hastings' contact with his minor child via the internet and/or Facebook.

3

19.    Based on an alleged violation of the No Contact Order, the State of Florida had Mr. Hastings arrested in California and proceeded to extradite him back to Fort Myers, Lee County, Florida so that he could be arraigned on the criminal charges as alleged.

20.    On or about April 5, 2014, Plaintiff, DAVID HASTINGS, was released from jail in Orange County, California and delivered by jail officials there to the Defendant, INMATE SERVICES, its agents and employees.

21.    The employees of the Defendant failed and refused to allow Mr. Hastings to acquire his clothing and medications for the extradition trip across the country. The employees of the Defendant failed to receive Mr. Hasting's required medications and decided to depart with Mr. Hastings as a prisoner without any clothing or medication for him.

22.    At the time Plaintiff, DAVID HASTINGS, was placed in the Defendant's van for transportation across the country, the Defendant, its agents and employees knew, or should have known that Mr. Hastings had just suffered a heart attack on or about March 23, 2014 and had just spent 5 days in the hospital.

23.    Plaintiff, DAVID HASTINGS, was placed in the Defendant's van for extradition and transportation across the country. He was clothed in a paper jumpsuit only. No attempt was made to secure Mr. Hastings' clothing, shoes or underwear. Mr. Hastings' medications which included nitroglycerin, blood thinners and beta blockers were not obtained by the Defendants' agents and/or employees.

24.    Plaintiff, DAVID HASTINGS, was handcuffed and shackled and placed in a van where two of the Defendants' employees were present. At all times material to this Complaint, the Defendant's two employees were acting within the course and scope of their employment with INMATE SERVICES.

4

25.    The two employees of the Defendant then commenced a drive across 31 states on a 15-day trip that encompassed 15,000 miles.

26.    During the course of the trip, Plaintiff, DAVID HASTINGS, remained handcuffed and/or shackled.

27.    The Defendant's van had a maximum capacity of 13 inmates or prisoners.

28.    The Defendant's employees provided two egg crates within the van for two additional inmates and/or prisoners.

29.    The van was filled to maximum capacity for the entire trip.

30.    Plaintiff, DAVID HASTINGS, spent 15 days, 24 hours each day, traveling through the 31 states during which time he was in the custody of the Defendant, its agents and/or employees.

31.    The Defendant's agents and/or employees were responsible for Plaintiff, DAVID HASTINGS' food and medication needs.

32.    At the time, Plaintiff, DAVID HASTINGS, was discharged from the Orange County Jail and entered the Defendant's van, he weighed 213 pounds.

33.    At the time, Plaintiff, DAVID HASTINGS, was delivered to the Lee County Jail in Florida on or about April 20, 2014, the Plaintiff weighed 178 pounds, a weight loss of 35 pounds in 15 days due to malnutrition and the provision of minimal food by the Defendant, its agents and employees.

34.    The Plaintiff was only provided minimal fast food for nutrition and was denied medical care and bathroom breaks throughout the duration of the trip in the van.

35.    Approximately 50 hours after the trip began and somewhere near Denver, Colorado, Plaintiff, DAVID HASTINGS, started bleeding from his rectum.

36.    Plaintiff, DAVID HASTINGS, showed the Defendant's driver the excessive blood-covered toilet paper while he was using the restroom at the Denver jail.

37.     Plaintiff, DAVID HASTINGS, requested to be taken to the hospital and was denied medical attention.

38.     Plaintiff, DAVID HASTINGS, was ordered back into the transportation van despite his worsening medical condition.

39.     The transportation van dropped off and picked up inmates, travelling throughout the Midwest to Chicago and then to Minnesota and Wisconsin.

40.     During a blizzard in Minnesota, the Defendant's van was operated too fast for conditions and the driver lost control of the van and slid off the road into a frozen pond. The state police were called and two separate two trucks were used to wench the transportation van out.

41.     During the duration of the trip, highway patrol officers in three different states stopped the Defendant's van for speeding in excess of 90 miles-per-hour. All local police agencies gave "warnings" to the Defendant's drivers.

42.     On or about April 18,2014, near York, New York, Plaintiff, DAVID HASTINGS, experienced rapid heartbeat syncope episodes at approximately 2:00 a.m. Mr. Hastings passed out and other inmates/prisoners demanded that Mr. Hastings be taken to the emergency room immediately.

43.     The Defendant employees called their dispatcher to seek advice and were told not to take Mr. Hastings to the emergency room.

44.     The inmates riding in the van at that time began to protest and indicated to the Defendant's employees that Mr. Hastings would likely die ifhe did not receive medical attention.

45.     Plaintiff, DAVID HASTINGS, was taken to Sacred Heart Hospital in York, New York at 3:30 a.m. Plaintiff, DAVID HASTINGS, was dehydrated and had Stage 2 bedsores and an abnormal EKG. After being stabilized at the hospital, Plaintiff, DAVID HASTINGS, was placed back in Defendant's van for transport.

46. The Defendant's van arrived in Lee County, Florida on or about April 20, 2014. Plaintiff, DAVID HASTINGS, was placed in a medical floor cell at the Lee County Jail due to his debilitated condition.

47. At the time and place that the Defendant, its agents and employees, finally delivered Plaintiff, DAVID HASTINGS, to jail officials in Fort Myers, Mr. Hastings had suffered bodily injury and resulting pain and suffering, serious medical problems, malnutrition, dehydration, mental anguish, a 35-pound weight loss and Mr. Hastings was in a debilitated and distraught condition.

48. The injuries and damages as suffered by Plaintiff, DAVID HASTINGS, culminated with his delivery by the Defendant, its agents and employees, to the custody of jail officials in Fort Myers, Lee County, Florida.

49. The injuries and damages suffered by the Plaintiff, DAVID HASTINGS, were the direct and proximate result of the negligence of the Defendant, its agents and employees and additionally by violations of federal civil rights law by the Defendant, its agents and employees.

<u>Count 1 — Negligence of Inmate Services Corporation</u>

50. The Plaintiff, DAVID HASTINGS, re-alleges and re-avers the Jurisdictional Facts and Identification of the Parties and Facts Giving Rise To These Causes of Action as though fully set forth herein.

51. At all times material to this Complaint, the Defendant, INMATE SERVICES, its agents and employees, had a duty to use reasonable care in the transportation of and maintenance of the Plaintiff throughout the 15-day extradition trip.

52. The Defendant, through its agents and employees, breached the duties of reasonable care owed to the Plaintiff and was careless and negligent in the following actions and/or inactions, amongst others:

7

A.      Confining the Plaintiff for hours at a time with an inability to move;

B.      Failing to allow the Plaintiff to use the restroom or stretch for hours at a time;

C.      Confining the Plaintiff in a van without an opportunity for sleep;

D.      Refusing to obtain Mr. Hastings' medications and to provide him medical care for his preexisting conditions and the episodes of injury he experienced in the van;

E.      Allowing Plaintiff, DAVID HASTINGS, to be subjected to cruel and unusual punishment during the transportation process;

F.      Failing to provide Plaintiff, DAVID HASTINGS, with adequate food, clothing and medication;

G.      Failing to obtain medical care for Plaintiff, DAVID HASTINGS, in the face of direct evidence that he was bleeding from his rectum during the transportation process.

H.      Failing to communicate the seriousness of Mr. Hastings' medical conditions to the defendant's dispatcher and to take Plaintiff, DAVID HASTINGS, to the hospital initially when he had heart problems in York, New York;

I.      Failing to provide Plaintiff, DAVID HASTINGS, with adequate nutrition such that he lost 35 pounds in 15 days during the transportation process;

J.      Threatening the Plaintiff, DAVID HASTING, during the transportation process and negligently and carelessly abusing other inmates in front of Plaintiff, DAVID HASTINGS, during the transportation process.

53.     Further still, the Defendant, INMATE SERVICES, was directly negligent in failing to train its employees to protect and not harm inmates and /or prisoners during the transportation process; in failing to supervise its drivers and employees who operated the van at excessive speeds and for long periods of driving time in violation of U.S. Department of Transportation Regulations;

8

in failing to track the whereabouts of the van such that the Defendant could ascertain that the van was being operated carelessly and illegally; and in failing to have policies and procedures in place to insure that inmates/ prisoners received adequate food, medicine, medical care and dignified treatment.

54.     As a direct and proximate result of the carelessness and negligence of the Defendant, INMATE SERVICES, its agents and employees, the Plaintiff, DAVID HASTINGS, suffered damages including bodily injury and physical pain and suffering, the expense of hospitalization and medical care, mental anguish, humiliation and embarrassment, weight loss due to dehydration and malnutrition, loss of the ability to enjoy life in the past and extending into the future and an aggravation of a preexisting condition and/or latent defect. The damages as suffered by the Plaintiff, DAVID HASTINGS, are permanent and continuing in nature and the Plaintiff will continue to suffer those damages into the future.

WHEREFORE, the Plaintiff, DAVID HASTINGS, demands judgment against the Defendant, INMATE SERVICES CORPORATION, in an amount in excess of $100,000.00, plus the costs of bringing this action and further the Plaintiff, DAVID HASTINGS, demands TRIAL BY JURY on all issues so triable as a matter of right by a jury.

## Count 2 —Negligent Hiring and Retention by the Defendant Inmate Services Corporation

55.     The Plaintiff, DAVID HASTINGS, re-alleges and re-avers the Jurisdictional Facts and Identification of the Parties and the Facts Giving Rise To These Causes of Action as though fully set forth herein.

56.     At some time prior to April 5, 2014, the Defendant, INMATE SERVICES, hired the two employees who functioned as drivers and guards and/or "agents" for the trip where Plaintiff, DAVID HASTINGS, was extradited to Florida from California.

57.    At all times material to this Complaint, the Defendant's two employees were acting within the course and scope of their employment with Defendant, INMATE SERVICES.

58.    As such, it was foreseeable that Defendant's employees would have control of prisoners or inmates including the Plaintiff, DAVID HASTINGS, during the transportation of prisoners including Mr. Hastings from California to Florida.

59.    The names of the Defendant's two employees are unknown to Plaintiff at this point in the proceedings and subject to discovery in this action.

60.    When the Defendant hired the two employees who were involved in Mr. Hastings' extradition and transportation, the Defendant knew that its employees would actively transport prisoners including the Plaintiff and further knew that its employees would be responsible to insure that nutrition, comfort, and medical care were being provided to the prisoners within the van.

61.    The Defendant's employees as aforesaid assumed control over the Plaintiff, DAVID HASTINGS, as a direct consequence of their employment.

62.    When the Defendant, INMATE SERVICES, hired the two employees who were the drivers and guards during the Hastings extradition trip, the Defendant hired those employees knowing that the employees were careless and lacked the appropriate skills to reliably transport prisoners across the country. Similarly, the Defendant knew or should have known that the employees hired for the trip were careless and negligent and would not have the proper skills and training to ensure safe transportation of prisoners including Plaintiff, DAVID HASTINGS, and that the employees would likely not understand or would disregard the medical conditions and nutrition requirements for inmates/prisoners including the Plaintiff, DAVID HASTINGS.

10

63.    As a direct and proximate result of the Defendant's negligent hiring and retention of the two employees, the employees were placed in control of Plaintiff, DAVID HASTINGS, and caused him to be subjected to the damages and injuries as alleged in this Complaint.

64.    Further still, the two employees were in direct control of Plaintiff, DAVID HASTINGS, as he was being transported across the country. As such, the two employees were responsible for Mr. Hastings' medical care and nutrition and the employees allowed or caused Mr. Hastings to lose weight through malnutrition and dehydration and to suffer injuries including the heart incidents that occurred in York, New York, and further they subjected Plaintiff, DAVID HASTINGS, to the deplorable conditions where he was not allowed to sleep, wear proper clothes, go to the bathroom or take his required medications.

65.    As a direct and proximate result of the negligent hiring and retention of the two employees by the Defendant, the Plaintiff, DAVID HASTINGS, suffered bodily injury and resulting pain and suffering, the expense of medical and hospitalization care in the past, disability, mental anguish, humiliation, inconvenience, a loss of the ability to enjoy life suffered in the past and to be suffered in the future and an aggravation of a preexisting condition and/or latent defect. The injuries and damages as suffered by the Plaintiff, DAVID HASTINGS, are permanent and continuing in nature and the Plaintiff will continue to suffer such damages into the future.

WHEREFORE, the Plaintiff, DAVID HASTINGS, demands judgment against the Defendant, INMATE SERVICES CORPORATION, for compensatory damages in excess of $100,000.00, plus the costs of bringing this action and further the Plaintiff, DAVID HASTINGS, demands TRIAL BY JURY on all issues so triable as a matter of right by a jury.

<u>Count 3 -Civil Rights Violations Under 42 U.S.C. §1983</u>

66.   The Plaintiff, DAVID HASTINGS, re-alleges the Jurisdictional Facts and Identification of the Parties and the Facts Giving Rise To These Causes of Action as though fully set forth herein.

67.   At all relevant times, the Defendant, INMATE SERVICES, its agents and employees, acted under the color of law.

68.   The prisoners or inmates transported by the Defendant, its agents and employees were at the mercy of their keepers for medical care. The inmates or prisoners were not in a position to call doctors or ambulances but instead needed to have their caretakers recognize the need for medical attention.

69.   The Defendant, through its agents and employees, imposed human indignities and used unreasonable force upon the Plaintiff and recklessly disregarded the inmate's needs and were deliberately indifferent to the medical needs of Plaintiff, DAVID HASTINGS, in violation of the 5th, 8th and 14th Amendments to the United States Constitution.

70.   The Defendant, its agents and employees, were aware of the Plaintiffs need for medical care and by the actions or inactions as set forth in this Complaint, the Defendant, its agents and employees were deliberately indifferent to the Plaintiff's medical needs in violation of the 5th, 8th and 14th Amendments to the United States Constitution.

71.   The Defendant, INMATE SERVICES, had a custom or policy of transporting inmates and/or prisoners such as Plaintiff, DAVID HASTINGS, with deliberate indifference to the comfort, safety and medical needs of the prisoner and/or inmate.

72.   In the alternative, the Defendant failed to have sufficient policies and procedures in place so as to ensure that inmates/prisoners including Plaintiff, DAVID HASTINGS, were afforded their constitutional rights.

73.     As a direct and proximate result of the violation of 42 U.S.C. §1983 and the deliberate indifference of the Defendant, its agents and employees, the Plaintiff, DAVID HASTINGS, suffered bodily injury and pain and suffering, the expense of hospital care in the past and to be so obtained in the future, inconvenience, disability, humiliation, mental anguish, loss of the ability to enjoy life in the past and extending into the future, and an aggravation of a preexisting condition and/or latent defect. The losses and damages as suffered by the Plaintiff, DAVID HASTINGS, are permanent and continuing in nature and the Plaintiff will continue to suffer those damages into the future.

WHEREFORE, the Plaintiff, DAVID HASTINGS, demands judgment for compensatory damages against the Defendant, INMATE SERVICES CORPORATION, in an amount exceeding $100,000.00, exclusive of interest and costs, plus the costs of bringing this action, attorney's fees as allowed by law and further demands TRIAL BY JURY on all issues so triable as a matter of right by a jury.

Respectfully submitted,

/s/ Jay Calvert Cooper

Jay Calvert Cooper (Florida Bar No. 99832)
LAW OFFICE OF JAY CALVERT COOPER, P.A.
Post Office Box 2649
Fort Myers, FL 33902
Phone:  (239) 931-9995
Fax;      (239) 288-5572
E-mail:  jaycooperlaw@gmail.com
              jcalpa@yahoo.com
Website:  jaycooperlaw.com