UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DAVID HASTINGS,

    Plaintiff,

v.                        Case No: 2:17-cv-145-FtM-99CM

INMATE SERVICES CORPORATION,

    Defendant.

_____

**OPINION AND ORDER**

This matter comes before the Court on defendant's Motion to Dismiss or Transfer Due to Improper Venue and/or Lack of Personal Jurisdiction (Doc. #12). Defendant submitted an Affidavit attached to the motion (Doc. #12-1). Plaintiff filed a Response in Opposition (Doc. #13) and a Request For Judicial Notice (Doc. #14)[1] of certain screenshots of defendant's company website. For the reasons set forth below, the motion to dismiss or transfer is denied and the motion for judicial notice is granted.

**I.**

The Complaint alleges that defendant Inmate Services Corporation (ISC), a citizen of Arkansas, contracts with governmental entities to transport inmates throughout the United States for extradition proceedings. (Doc. #1, ¶¶ 3, 5.) On or

---

[1] Plaintiff is now proceeding *pro se*, but was represented by counsel when the response was filed.

about April 5, 2014, ISC picked up plaintiff David Hastings (plaintiff or Hastings) in Orange County, California for extradition to Florida on an outstanding warrant which had been filed in Lee County, Florida, for violation of a No Contact Order. (Doc. #1, ¶¶ 16-18.) Plaintiff infers ISC was to transport plaintiff pursuant to an agreement between ISC and the State of Florida and/or local Florida law enforcement officials in Lee County.[2] (Id. at ¶¶ 7-9.) Plaintiff's trip ultimately took 15 days, covered 15,000 miles, and traversed 31 states before arriving in Florida. (Id. at ¶ 25.)

Two ISC employees were in charge of plaintiff's care, custody, and control while he was being transported. (Doc. #1, ¶ 24.) Prior to beginning the transport, ISC refused to allow plaintiff to acquire his clothing and medications for the cross-country trip, despite the fact that plaintiff had suffered a heart attack on or about March 23, 3014, and had spent five days in the hospital. (Id. at ¶¶ 21-22.) Plaintiff was handcuffed, shackled, and placed in ISC's van for extradition across the country clothed in a paper jumpsuit only. (Id. at ¶¶ 23-24.) Plaintiff remained handcuffed and shackled for the duration of the trip. (Id. at ¶ 26.)

---

[2] Plaintiff is not in possession of any contract or agreement, but expects one will be revealed during discovery. (Doc. #1, ¶ 10.)

The van had a maximum capacity of 13 inmates, but ISC provided two egg crates within the van for two additional inmates, filling the van to maximum capacity. (Doc. #1, ¶¶ 27-29.) Plaintiff was provided minimal food, and was denied medical care and bathroom breaks, losing 35 pounds during the 15-day trip. (Id. at ¶¶ 32-34.)

Approximately 50 hours after the ride began, somewhere near Denver, Colorado, plaintiff started bleeding from his rectum, and informed the van's driver. (Doc. #1, ¶¶ 35-36.) Plaintiff requested to be taken to a hospital, but ISC employees denied the request and the group continued on their trip. (Id. at ¶ 37.)

The van dropped off and picked up inmates throughout the trip, traveling through the midwest to Chicago, and then to Minnesota and Wisconsin. (Doc. #1, ¶ 39.) During a blizzard in Minnesota, the van slid off the road into a frozen pond due to careless driving. (Id. at ¶ 40.) Highway patrol officers pulled over the van for speeding in three different states. (Id. at ¶ 41.)

On or about April 18, 2014, in New York, plaintiff experienced rapid heartbeat syncope and passed out. (Doc. #1, ¶ 42.) ISC's employees called their dispatch and were told not to take plaintiff to the emergency room. (Id. at ¶ 43.) Plaintiff was eventually taken to Sacred Heart Hospital in York, New York, dehydrated and suffering from bed sores and an abnormal EKG. (Id. at ¶ 45.)

After he was stabilized, plaintiff was placed back in the ISC van, headed for Florida. (Id.)

Plaintiff arrived in Lee County, Florida on April 20, 2014, and was placed on the medical floor of the Lee County Jail. Plaintiff was given medical treatment due his debilitated condition and serious medical problems, including malnutrition, dehydration, mental anguish, and weight loss. (Doc. #1, ¶¶ 47-49.)

The three-count Complaint (Doc. #1) alleges state law claims of negligence (Count I) and negligent hiring and retention (Count II), although it is unclear which state or states' law plaintiff asserts apply to these claims. Plaintiff also states a federal claim under 42 U.S.C. § 1983 (Count III) for the lack of constitutionally adequate medical care. The Complaint premises subject-matter jurisdiction on both diversity of citizenship and federal question jurisdiction. (Id. at ¶¶ 12-13.)

**II.**

ISC moves to dismiss the Complaint for lack of personal jurisdiction and improper venue.[3] Plaintiff opposes both aspects of the motion.

---

[3] Although titled a motion to dismiss *or transfer* due to improper venue, defendant fails to make an argument for transfer; instead stating that it anticipates filing a motion to transfer pursuant to 28 U.S.C. ¶ 1404 if the motion to dismiss is denied. (Doc. #12, n.2.) Therefore, the Court will only address dismissal.

**A. Personal Jurisdiction**

"A federal district court in Florida may exercise personal jurisdiction over a nonresident defendant to the same extent that a Florida court may, so long as the exercise is consistent with federal due process requirements. If both Florida law and the United States Constitution permit, the federal district may exercise jurisdiction over the nonresident defendant." Licciardello v. Lovelady, 544 F.3d 1280, 1283 (11th Cir. 2008) (internal citation omitted). Defendant asserts that neither component of this standard is satisfied in this case.

**(1) Florida Long Arm Statute**

Plaintiff has not been very clear as to which portions of the Florida "long arm" statute he relies upon for the assertion of personal jurisdiction. Plaintiff's Response contains verbiage which is only contained in the general jurisdiction provision of the statute (Fla. Stat. § 48.193(2)), but also states "[i]n the instant case, the concern is the exercise of specific jurisdiction over the Defendant." (Doc. #13, pp. 5, 8.) If plaintiff really intends to assert general jurisdiction, the argument is rejected. Plaintiff has clearly not satisfied the standard for such all-purpose jurisdiction over a non-Florida corporation. Wolf v. Celebrity Cruises, Inc., 683 F. App'x 786, 791-92 (11th Cir. 2017) (citing cases).

The only seemingly relevant portions of the Florida Long Arm Statute relate to specific jurisdiction and provide:

> (1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
>
>   1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
>
>   2. Committing a tortious act within this state.
>
>   . . .
>
>   6. Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of injury . . . [t]he defendant was engaged in solicitation or service within this state."

Fla. Stat. §§ 48.193(1)(a)(1),(2),(6).

### (a) Fla. Stat. § 48.193(1)(a)(1): Business or Business Venture in Florida

"In order to establish that a defendant is carrying on [a] business for the purposes of the long-arm statute, the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit." Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A., 421 F.3d 1162, 1167 (11th Cir. 2005) (quoting Future Tech. Today, Inc. v. OSF Healthcare Sys., 218 F.3d 1247, 1249 (11th Cir. 2000)). "[E]ngaging in a single act for profit can amount to a business

venture," Labbee v. Harrington, 913 So. 2d 679, 683 (Fla. 3d DCA 2005) (citing Wm. E. Strasser Constr. v. Linn, 97 So. 2d 458, 460 (Fla. 1957)), but not every gainful transaction involving a Florida resident amounts to a business venture. See Walack v. Worldwide Machinery Sales, Inc., 278 F. Supp. 2d 1358, 1366 (M.D. Fla. 2003). Some factors the Court must consider include the "presence and operation of an office in Florida, [ ] the possession and maintenance of a license to do business in Florida, the number of Florida clients served, and the percentage of overall revenue gleaned from Florida clients." Horizon, 421 F.3d at 1167 (internal citations omitted).

The Complaint alleges that ISC does business "throughout the United States including Fort Myers, Lee County, Florida." (Doc. #1, ¶ 3.) It also alleges that while ISC was not registered to do business in the State of Florida, it was in fact doing business in Florida at all relevant times. (Id. at ¶ 4.) Additionally, it is alleged that ISC was in the business of transporting inmates and prisoners across the country for extradition proceedings (Id. at ¶ 5), and transported plaintiff to Fort Myers, Lee County, Florida pursuant to an extradition request (Id. at ¶ 7.)

ISC has submitted the affidavit of David Cagel, its President, in which he attests that ISC has never maintained an office in Florida, does not own real property in Florida, and does not maintain any bank accounts in Florida. (Doc. #12-1, ¶ 2.)

Furthermore, ISC has never entered into a contract with a governmental entity in Florida for the ongoing, repeated, or continuous transportation of prisoners. (Id. at ¶ 3.) ISC has no employees in Florida, and the ISC employees who encountered plaintiff live in Arkansas, Tennessee, and Mississippi. (Id. at ¶ 8.) On rare occasion, ISC will transport an inmate for a Florida county, and on those occasions it is done without a formal contract and the particular county is invoiced for the transport. (Id.) In 2014, ISC serviced two counties in Florida. (Id.) Cagel also attests that Florida comprises very little of ISC's business due to competitors who operate within Florida. (Id. at ¶ 4.) Cagel states that records are not kept in an accessible way to calculate how much of ISC's business was in Florida, but his "educated guess" is that in 2014, 2-3% of ISC's work was in Florida. (Id.) Prisoner pick-ups only occur in Florida when ISC is picking up or dropping off a prisoner in another state. (Id. at ¶ 5.) ISC's records show that plaintiff was housed at ISC's Arkansas facility for almost three days during the middle of his transport (from April 12-15, 2014). (Id. at ¶ 6.) Less than one day of the transport of plaintiff to Florida was spent in Florida. (Id. at ¶ 7.)

This affidavit shifts the burden back to plaintiff to produce evidence supporting personal jurisdiction. United Tech. Corp. v. Mazer, 556 F.3d 1260, 1276 (11th Cir. 2009). Plaintiff submitted

screenshots of pages from ISC's website (Docs. ##13-1 - 13-6)[4], showing that ISC conducts business throughout the United States and actively solicits customers for the interstate transportation of inmates. Plaintiff highlights that ISC's website states that it has delivered an alleged murderer and hitman in a high-profile case involving the murder of a Florida doctor to Florida. (Doc. #13-4.)

Plaintiff's submission does not refute Cagel's affidavit assertions, which establish that ISC's activities in Florida do not constitute ongoing or substantial business in Florida. Plaintiff has not met his burden of establishing ISC is within the reach of this portion of Florida's long-arm statute.

### (b) Fla. Stat. § 48.193(1)(a)(2): Committing a Tortious Act in Florida

Section 48.193(1)(a)(2) provides that a defendant "submits himself or herself ... to the jurisdiction of the courts of this state for any cause of action arising from [the defendant's activities] ... [c]ommitting a tortious act within this state." Fla. Stat. § 48.193(1)(a)(2). Physical presence in Florida is not required to commit a tortious act in Florida. Internet Sols. Corp. v. Marshall, 39 So. 3d 1201, 1207 (Fla. 2010). The Eleventh

---

[4] Plaintiff requests that the Court take judicial notice of the screenshots from ISC's website, to which ISC did not file an opposition. (Doc. #14.) As the documents are not disputed, the Court will do so.

Circuit has recognized that "[f]or personal jurisdiction to attach under the 'tortious activity' provision of the Florida long-arm statute, the plaintiff must demonstrate that the non-resident defendant 'committed a substantial aspect of the alleged tort in Florida' by establishing that the activities in Florida 'w[ere] essential to the success of the tort.'"  Id. at 857 (quoting Williams Elec. Co. v. Honeywell, Inc., 854 F.2d 389, 394 (11th Cir. 1988)).  The Eleventh Circuit has held that what is now Fla. Stat. § 48.193(1)(a)(2) "permits jurisdiction over the nonresident defendant who commits a tort outside of the state that causes injury inside the state."  Licciardello, 544 F.3d at 1283 (citing Posner v. Essex Ins. Co., 178 F.3d 1209, 1216 (11th Cir. 1999)).

The Complaint alleges that ISC "committed tortious acts that culminated in damages to the Plaintiff in Lee County, Florida." (Doc. #1, ¶ 4.)  It further alleges that plaintiff's damages "culminated with his delivery to jail officials on or about April 20, 2014 in Fort Myers, Lee County, Florida."  (Id. at ¶ 11.) There is no allegation that plaintiff received proper medical attention until his delivery to the jail in Lee County.  The Complaint alleges that ISC was negligent in the following ways:

- Confining plaintiff for hours at a time with an inability to move;

- Failing to allow plaintiff to use the restroom or stretch for hours at a time;

- Confining plaintiff in a van without an opportunity to sleep;

- Refusing to obtain plaintiff's medications and to provide him medical care for his preexisting conditions and the episodes of injury he experienced in the van;

- Allowing plaintiff to be subjected to cruel and unusual punishment during the transportation process;

- Failing to obtain medical care for plaintiff in the face of direct evidence that he was bleeding from his rectum during the transportation process;

- Failing to communicate the seriousness of plaintiff's medical conditions to the defendant's dispatcher and to take plaintiff to the hospital initially in New York;

- Failing to provide plaintiff with adequate nutrition such that he lost 35 pounds in 15 days during the transportation process;

- Threatening plaintiff during the transportation process and negligently and carelessly abusing other inmates in front of plaintiff.

(Doc. #1, ¶¶ 52.A-J.)

ISC argues that none of the substantial and essential facts underlying plaintiff's claims occurred in Florida since the majority of the tortious activity occurred elsewhere, including places identified in the Complaint such as California, Colorado, Minnesota, and New York. Cagel's affidavit also attests that while plaintiff spent at least three days in Arkansas, only one day was spent in Florida under ISC's custody and control. Plaintiff argues that it is sufficient that the tortious activity culminated with his delivery to a Florida jail on or about April 20, 2014, where he was treated for serious medical issues. (Id.

at ¶¶ 46-48.) A reasonable inference from the allegations in the Complaint is that plaintiff received no improved care while he was in Florida until being turned over to the Lee County jail.

The Court finds that the Complaint sets forth sufficient facts, which, if true, establish a basis for long-arm jurisdiction under Florida Statute § 48.193(1)(a)(2). The number of days in Florida is not determinative. The Complaint alleges that defendant committed torts outside the State of Florida which continued to cause injury to plaintiff inside of Florida. Additionally, a reasonable inference from the facts in the Complaint is that plaintiff's alleged mistreatment continued for the time he was in defendant's custody in Florida. The tortious activity involves the conditions within the van, and the treatment of plaintiff throughout the entirety of the trip, which would include the trip through Florida before dropping plaintiff off. Plaintiff also claims that he was treated for his injuries in Florida. This totality is sufficient under Fla. Stat. § 48.193(1)(a)(2). Licciardello, 544 F.3d at 1283 (citing Posner, 178 F.3d at 1216).

### (c) Fla Stat. § 48.193(1)(a)(6): Causing Injury in Florida

Plaintiff also seems to rely upon Fla. Stat. § 48.193(1)(a)(6), which allows personal jurisdiction for "[c]ausing injury to persons or property within this state arising out of an

act or omission by the defendant outside this state, if, at or about the time of injury . . . [t]he defendant was engaged in solicitation or service within this state." This does not seem to have any application to the facts alleged in the Complaint.

**(2) Due Process**

In the specific jurisdiction context, due process requires that defendant have adequate notice of the suit, and be subject to the personal jurisdiction of the forum state. <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 291 (1980). The "fair warning" requirement is satisfied if defendant "purposefully directed his activities at the forum", and injuries resulted from those activities." <u>Madara v. Hall</u>, 916 F.2d 1510, 1516 (11th Cir. 1990). Defendant's "conduct and connection with the forum must be of a character that he should reasonably anticipate being haled into court there." <u>Id.</u> (citing <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 474 (1985)); <u>World-Wide Volkswagen Corp.</u>, 444 U.S. at 297). The Court "must determine whether sufficient minimum contacts exist between the defendants and the forum state so as to satisfy 'traditional notions of fair play and substantial justice' under the Due Process Clause of the Fourteenth Amendment." <u>Sculptchair, Inc. v. Century Arts, Ltd.</u>, 94 F.3d 623, 626 (11th Cir. 1996) (citations omitted). <u>See also</u> <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945).

> Thus where the defendant 'deliberately' has engaged in significant activities within a State, [ ], or has created 'continuing obligations' between himself and residents of the forum, [ ], he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

Burger King Corp., 471 U.S. at 475-76 (internal citations omitted). Factors considered to determine if the contacts comport with fair play and substantial justice "include the burden on the defendant, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief and the judicial system's interest in resolving the dispute." Licciardello, 544 F.3d at 1288.

The Court further finds that the exercise of personal jurisdiction over ISC does not offend due process. ISC's web site is directed to Florida and advertises/solicits business in Florida. Furthermore, ISC enters into informal agreements with Florida counties for extradition, and does in fact conduct extraditions to Florida on occasion. These include at least one other recent extradition to Florida, along with the particular extradition at issue in this case. Thus, ISC could reasonably anticipate being haled into Court here.

**B. Venue**

Alternatively, ISC moves to dismiss for improper venue. Plaintiff seems to allege venue pursuant to 28 U.S.C. §

1391(b)(2)[5], stating: "Venue is proper in the [] Middle District of Florida in that the Defendant was doing business in the State of Florida and delivered Plaintiff [] in his damaged state to the jail in Fort Myers, Lee County, Florida." (Doc. #1, ¶ 15.) Defendant argues that plaintiff has failed to allege that a substantial part of the events or omissions occurred in the Middle District of Florida, as most of the mistreatment occurred elsewhere.

When venue is improper, a court shall "dismiss, or in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). In the Eleventh Circuit there is a "strong presumption against disturbing plaintiffs' initial forum choice." SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A., 382 F.3d 1097, 1100 (11th Cir. 2004). Here, taking all factual allegations in the Complaint as true and in the light mot favorable to plaintiff, the Court finds that dismissal for improper venue fails. As discussed above, the Complaint alleges that defendant's continued to cause injury to plaintiff inside of Florida, as the alleged mistreatment

---

[5] A civil action may be brought in –

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated

28 U.S.C. ¶ 1391(b)(2).

continued for the time plaintiff was in defendant's custody in Florida. Plaintiff also claims that he was treated for his injuries in Florida. The factual allegations are enough to survive a motion to dismiss for improper venue under Section 1391(b)(2).

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1. Defendant's Motion to Dismiss or Transfer Due to Improper Venue and/or Lack of Personal Jurisdiction (Doc. #12) is **DENIED**.

2. Plaintiff's Request for Judicial Notice (Doc. #14) is **GRANTED**.

**DONE and ORDERED** at Fort Myers, Florida, this __6th__ day of November, 2017.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Plaintiff
Counsel of Record